## Dixon *v.* Fuller.

*Ejectment—Description of land—Evidence—Findings of referee.*

In an action of ejectment tried by a referee, the uncontradicted evidence showed that in 1871, a firm became the equitable owners of the south half of a tract of land. The deed for this tract was not executed to the firm until September 8, 1888. In 1871 the firm agreed in writing to sell the undivided half of the land, and in 1881, executed a deed for the divided one half. The uncontradicted evidence showed that in all these transactions the parties intended to convey the divided half, and that the undivided half referred to in the agreement of 1871 was a mistake. *Held,* that the evidence was sufficient to sustain a finding of fact by the referee that the land intended to be conveyed was the south half of the land.

*Mortgage—Purchase money—Exchange of land.*

Where two parties agree to an exchange of lands and the second party agrees to lend to the first party a sum of money secured by a mortgage on the land conveyed by the first party, to pay for an outstanding interest in the land conveyed to the second party, the money represented by the mortgage is not purchase money.

Argued April 18, 1900. Appeal, No. 85, Jan. T., 1900, by defendants, from order of C. P. Clearfield Co., Sept. T., 1892, No. 166, sustaining exceptions to report of referee in case of J. A. Dixon and Eve, his wife, v. Sidney Fuller, W. C. Pentz and H. L. Dunlap. Before GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ. Reversed.

Ejectment for a tract of land in Sandy township.
Exceptions to report of referee.

The referee, W. B. Bigler, Esq., reported as follows:

### CONCLUSIONS OF FACT.

1. On September 2, 1869, Jas. T. Leonard and wife conveyed to W. D. J. Marlin ninety-three acres of land in Brady, now Sandy, township, Clearfield county, Penna.

2. In 1871 or 1872, Sidney Fuller, C. M. Garrison and J. N. Garrison became the owners by purchase from W. D. J. Marlin of the south half of the above ninety-three acres and containing forty-six acres more or less. The deed for this forty-six acres was not executed by Marlin to Fuller and Garrison until September 8, 1888.

3. On March 1, 1871, John F. Overdorff by agreement in writing with Sidney Fuller agreed to sell and convey to said Fuller a tract of land in Brady township and a lot in West Liberty. In consideration whereof said Fuller agreed to sell and convey to John F. Overdorff the undivided half of what is known as the Marlin lot, reserving the timber, and in addition to pay to him $100.

4. The Marlin lot is the ninety-three acres above described in the deed from Leonard to Marlin.

5. At the time of making the above agreement Fuller and his firm were the owners of the divided half of ninety-three acres instead of the undivided half.

6. On October 26, 1881, S. Fuller and wife, C. M. Garrison and wife and J. N. Garrison and wife conveyed the forty-six-acre tract, and being the land in controversy, to Sarah Ann Overdorff, the wife of John F. Overdorff.

7. We find from the evidence that this is the same land as described in the agreement as the undivided half of the Marlin lot and this deed was made to Sarah Ann Overdorff by direction of John F. Overdorff, her husband, and was made in execution of the contract of March 1, 1871.

8. On the same day Sarah Ann Overdorff and husband executed a mortgage on the land to Sidney Fuller for the sum of $400. This money was obtained and used to pay Elizabeth Solida, a sister of J. F. Overdorff, for her interest in the tract of land, which J. F. Overdorff in the agreement of March 1, 1871, had bound himself to sell and convey to Sidney Fuller.

9. Prior to this time, to wit: on February 13, 1877, judgment

was entered in the common pleas of Clearfield county, against John F. Overdorff and in favor of C. D. Evans & Brother to No. 273, March term, 1877, in the sum of $91.85.

10. On August 12, 1878, execution was issued on this judgment, and a levy was made on the defendants' interest in the whole tract of ninety-three acres, inquisition held and property extended at a rental.

11. On February 2, 1882, a scire facias was issued to March term, 1882, and the judgment was revived in the sum of $150.25.

12. A vend. ex. was issued on October 26, 1885, and the land was sold by the sheriff on December 19, 1885, to Sidney Fuller for the sum of $115, and by deed bearing date December 23, 1885, and acknowledged in open court May 13, 1886, R. N. Shaw conveyed the same to Sidney Fuller.

13. On May 3, 1885, Sarah Ann Overdorff and Jno. Overdorff conveyed this property to Eve Dixon and exchange thereof, the said Eve Dixon and Jas. Dixon, her husband, conveyed to Sarah A. Overdorff a tract of land in Penn township, same county.

14. It was the understanding and agreement between the parties to this exchange that the Dixons were to pay to Sidney Fuller the amount of his claim against the Overdorff property, Mr. Dixon having prior to the date of the deed called on Mr. Fuller to ascertain the amount of his claim and to arrange for the payment of the same. There was some conflicting testimony as to the amount of his claim and as to the information of the amount furnished to Mr. Dixon. Dixon admitted that he was to pay the mortgage, but we find from the weight of evidence that the amount of Mr. Fuller's claim was about $600, being the amount of the mortgage and the amount of the purchase at sheriff's sale, and that Dixon was so informed by both Fuller and Mrs. Overdorff.

15. We further find as a fact that the plaintiffs have never paid to Mr. Fuller any portion of this claim nor made any tender to him of the amount or any part thereof. On February 19, 1887, Sidney Fuller and wife conveyed this tract of land for the consideration of $600 expressed therein, to W. C. Pentz, and W. C. Pentz by articles of agreement on February 24, 1887, sold the same to H. L. Dunlap; and on June 7, 1892, Eve Dixon and Jas. A. Dixon brought this action of ejectment

against Sidney Fuller, W. C. Pentz and H. L. Dunlap for the possession of this land.

## CONCLUSIONS OF LAW.

1. That the judgment of Evans and Brother against John F. Overdorff was a lien upon the equitable interest of said Overdorff in the land purchased by him from S. Fuller, by the agreement of March 1, 1871.

2. That the title vested in Mrs. Overdorff by the deed from Fuller of October 26, 1881, was subject to the lien of the Evans judgment.

3. That the sheriff's sale of the John Overdorff interest in the land was regular and valid and it divested the title of Mrs. Overdorff to the land, which she had acquired by the Fuller deed.

Sidney Fuller, the grantor of Mrs. Overdorff, having become the purchaser of the land at sheriff's sale, the questions arise whether such purchase does not inure to the benefit of Mrs. Overdorff, and whether by reason of his legal relation to her as grantor, he can set up this subsequently acquired title against her or her grantees. The well known principles of law on which is founded the doctrine of estoppel by deed, is invoked by the plaintiffs as applicable to this case as follows: " That where a party conveys land to which he had no title, or a defective title, and afterwards acquired a good title, that title immediately inures to the benefit of the grantee." And as a further statement of the same principle, that if one conveys land with a covenant of warranty against all lawful claims and demands, he cannot be allowed to set up against his grantee or those claiming under him any title subsequently acquired by him by purchase or otherwise. That such new title will inure by way of estoppel, to the use and benefit of his grantee, his heirs and assigns. These principles are founded on equity and justice as it is not just or right that a party should be permitted to hold or recover an estate in violation of his own covenant.

The plaintiffs contend that the judgment of Evans, being an incumbrance on the land at the time of Fuller's conveyance to Mrs. Overdorff, she is protected against this sheriff's title in the hands of Sidney Fuller by the covenants both express and implied in her deed.

We do not think the principles of law above stated nor the doctrine of estoppel by deed is applicable to this case. Sidney Fuller's title was a good title (or was made good by subsequent conveyances to him) when he agreed to sell and convey the land to John F. Overdorff. The defect was an incumbrance on the title of John F. Overdorff and created by him, and over which Fuller had no control, nor was he required in law to remove this incumbrance or cure this defect, when he made the deed to Mrs. Overdorff.

The equities of Mrs. Overdorff are the same as her husband, and no greater. The title to the land under the agreement belonged to the husband, and by his consent and direction it was put in the wife, and she took the land clogged with the debts of her husband. The rules of law referred to can only be applied " to prevent fraud, and to impose silence on a party where in conscience and honesty he should not be allowed to speak : " Calder v. Chapman, 52 Pa. 362.

In the present case there was no contract between Mrs. Overdorff and Mr. Fuller out of which the equity could arise that he was bound to protect her title against the judgment liens on her husband's interests in the land.

To support the plaintiffs' position we should have to first conclude that the original agreement between Fuller and Overdorff had been canceled ; that the deed from Fuller to Mrs. Overdorff had been made by virtue of a new contract, and a new consideration, but the evidence does not warrant such a conclusion. The case of Skinner v. Starner, 24 Pa. 123, cited by plaintiffs' counsel, decides that as " between grantor and grantee in a conveyance with general warranty, of land bound by a judgment, the grantor is bound to discharge the judgment ; and the title subsequently acquired by the grantor at a sheriff's sale, under such judgment inures to the benefit of the grantee." But the distinction between Skinner v. Starner and this case is, that in the former the conveyance was with a general warranty, and the incumbrance was against the grantor in the conveyance.

In the deed from Fuller to Mrs. Overdorff there were no special covenants of title, and no covenant of any warranty, and no recitals of seizen. The only covenant in the deed was the implied covenant, arising from the words " grant, bargain

and sell." But in the language of the act of the assembly creating it, these words are a covenant that the grant is freed from incumbrances " done or suffered from the grantor." This as interpreted by the courts is a covenant that the grantor has done no act, nor created any incumbrance whereby the estate granted by him may be defeated.

Nor do we think that Fuller was estopped by his deed and by the mortgage executed by Mrs. Overdorff to him, from alleging that the land was the property of the husband. " A mortgagee of land, the title to which stands in the name of a married woman who has joined with her husband in executing the mortgage, is not thereby estopped from alleging that in point of fact, the land mortgaged belonged to her husband : " Pittsburg Ins. Co. v. Groves, 3 Pitts. Rep. 401.

We are of the further opinion, that the action of ejectment cannot be sustained in this case, for the reason that it is a possessory action. It admits Fuller, who was mortgagee and purchaser at sheriff's sale, to be in possession of the land. We do not think the law will turn Fuller out of possession when the plaintiffs admit that in their purchase from Overdorff, they were to pay Fuller the amount of his mortgage, and further admitting that they have not paid or tendered to him the amount or any part thereof.

Judgment is directed to be entered for the defendants.

The court sustained exceptions to the report of the referee, and entered judgment in favor of the plaintiffs.

*Error assigned* was the order of the court.

*Frank Fielding* and *W. C. Pentz,* for appellants.—A deed of land accepted by the vendee after articles of agreement, is to be considered as the ultimate intent of the parties where there is no misconception of the deed by either party : Wilson v. McNeal, 10 Watts, 422 ; Gregory v. Griffin, 1 Pa. 208 ; Creigh v. Beelin, 1 W. & S. 83 ; Jones v. Wood, 16 Pa. 25 ; Madore's App., 129 Pa. 15 ; Blood v. Crew Levick Co., 177 Pa. 606 ; Old Colony Trust Co. v. Allentown, etc., Rapid Transit Co., 192 Pa. 618.

*A. L. Cole,* with him *W. A. Hagerty* and *H. A. Moore,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, May 29, 1900:

We are all of opinion that the facts of this case were correctly found by the referee and that the learned judge of the court below erred in not affirming his findings of fact and entering judgment in favor of the defendants.

The learned court below says that in his "opinion the findings of law and conclusion of the referee are correct as based upon his findings of fact." But the court holds that the referee's second, fifth and seventh findings of fact are not supported by the evidence.

The referee's second finding of fact is as follows:

"In 1871 or 1872, Sidney Fuller, C. M. Garrison and J. N. Garrison, became the owners by purchase from W. D. J. Marlin of the south half of the above ninety-three acres and containing forty-six acres more or less. The deed for this forty-six acres was not executed by Marlin to Fuller and Garrison until September 8, 1888." By this deed W. D. J. Marlin and wife conveyed to C. M. and J. N. Garrison and Sidney Fuller "all the southern half of that certain tract, piece or parcel of land situated in the township of Sandy, formerly Brady, in the county of Clearfield and state of Pennsylvania, bounded on the north by the northern half of the tract, east by Pentz, south by land now or formerly of Bell and west by Walburn. Being the southern half of a certain piece, parcel or tract of land conveyed by James T. Leonard and wife to W. D. J. Marlin by deed dated September 2, 1869, recorded in Clearfield county in deed book E E p. 142." The deed recites the fact that it "was made in pursuance of an agreement entered into about 1871 or 1872." It is not claimed, and the evidence does not disclose, that there was any other agreement between the parties than the one for the purchase of the land described in the deed. It will be presumed, therefore, that the deed was made in execution of and to carry out the agreement of 1871 or 1872 and that the property thereby conveyed was the same contracted to be sold by said agreement. The testimony of Sidney Fuller supplements and corroborates the recital in the deed. He testified that this deed was for the land that the Garrisons and Fuller purchased of W. D. J. Marlin in 1869 or 1870, as he thought, by a written contract. The deed to the Garrisons and Fuller from Marlin, although not executed and delivered until

September, 1888, shows, as we have seen, that it was made in pursuance of a contract entered into about the time testified to by Fuller and conveys the divided half of the Marlin tract. In view of the fact that this evidence was not contradicted, we think it was ample to sustain the referee in his second finding of fact. It is equally applicable to and supports the referee's fifth finding of fact that "at the time of making the above agreement (of March 1, 1871 between John F. Overdorff and Sidney Fuller), Fuller and his firm were the owners of the divided half of ninety-three acres instead of the undivided half."

The seventh finding of fact by the referee is as follows: " We find from the evidence that this is the same land as described in the agreement as the undivided half of the Marlin lot and this deed was made to Sarah Ann Overdorff by direction of John F. Overdorff, her husband, and was made in execution of the contract of March 1, 1871." The learned judge of the court below concedes that Fuller stated in his testimony as found by the referee, that the contract and the deed are for the same land, yet he reverses this finding of fact because, as he holds, an inspection of the papers shows that the statement is incorrect, and that it appears by Fuller's testimony that the contract sets out the real agreement. It is true that the word " undivided " is used in the agreement of 1871, but it is manifest from all the evidence that this was an error and that it was the intention of both parties to the contract to convey the divided one half of the Marlin premises. Every act done by the parties interested in the title with reference to the matter since the execution of the contract leads to this conclusion. James T. Leonard, by deed of September 2, 1869, conveyed to W. D. J. Marlin ninety-three acres and 117 perches of land which includes the land for which this action was brought. The deed of September 8, 1888, by Marlin to the Garrisons and Fuller, was made, as therein recited, in pursuance of an agreement entered into about 1871 or 1872 and conveyed the southern half of the land conveyed to Marlin by Leonard. The grantees in this deed, therefore, did not take or hold by this conveyance an undivided half, but the southern half, of the ninety-three-acre tract. This was the only interest they had in the Marlin land at the time they agreed to exchange lands with John F. Overdorff in 1871. By deed dated October 26, 1881, the Garri-

sons and Fuller conveyed to Sarah Ann Overdorff a tract of land in Sandy township, Clearfield county, consisting of one half of eighty acres more or less and described by adjoiners, one of which is part of the original tract, conveyed by Leonard to Marlin. It is conceded that this is the land in dispute. It is clearly shown by the testimony that this deed was made by the grantors to Mrs. Overdorff at the request of her husband, John F. Overdorff, and in pursuance and execution of the written contract of March 1, 1871, between Overdorff and Sidney Fuller. The consideration for the execution and delivery of the deed to Mrs. Overdorff was the forty-two-acre tract of land sold by the agreement of March 1, 1871 by John F. Overdorff and conveyed by him and his sister, Mrs. Solida, to John F. Dubois. This deed was made to Dubois at Fuller's request. From these and the other facts in the case, it is apparent that both Fuller and Overdorff regarded and treated their contract of 1871 as an agreement for the sale of the divided one half of, and not an undivided interest in, the Marlin land.

We are therefore of opinion that the facts disclosed by the evidence fully justified the referee in finding that the land conveyed to Mrs. Overdorff by the deed of October 26, 1881, was the same land as described in the agreement of March 1, 1871 between John F. Overdorff and Sidney Fuller.

The learned court below was in error in holding that John F. Overdorff's equitable title to the premises conveyed to his wife was vested in Sidney Fuller by the sheriff's sale on the judgment of Evans & Brother, subject to the payment of $400 of unpaid purchase money represented by the mortgage from Mrs. Overdorff and her husband. The consideration due from John F. Overdorff to Fuller was, as we have before stated, the forty-two acres of land described in the agreement of March 1, 1871, and conveyed by John F. Overdorff and his sister to John Dubois by the deed of December 17, 1881. So far as the evidence discloses, there is no unpaid purchase money due Fuller and he claims none. The mortgage was given by Mrs. Overdorff and her husband to Sidney Fuller to secure the repayment to him of $400, which he had advanced John F. Overdorff to pay his sister, Mrs. Solida, for her interest in the forty-two acres of land which John F. Overdorff had agreed to convey to Fuller. The sum due Sidney Fuller on this mortgage

was not purchase money. The sheriff's sale, therefore, vested in Sidney Fuller the equitable title to the premises in dispute.

We have considered and disposed of the only questions raised by the assignments of error and our conclusion requires us to sustain the fifteenth assignment and hold that the court below erred in reversing the referee's findings of fact and conclusions of law, and in refusing to direct a judgment for the defendants.

The judgment is reversed and judgment is directed to be entered for the defendants with costs.